# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Yolanda Lytes,               )
                         )
      Plaintiff,         )
                         )     Civil Action No. 2:12-2951-RMG
      vs.                )
                         )
Carolyn W. Colvin, Acting Commissioner  )
of Social Security,             )     **ORDER**
                         )
      Defendant.       )
_____)

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on November 13, 2013, recommending that the Court reverse the decision of the Commissioner and award benefits. (Dkt. No. 23). The Commissioner filed objections to the Report and Recommendation. (Dkt. No. 24). As more fully set forth below, the Court reverses the decision of the Commissioner and remands for the award of benefits.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which exists in significant numbers either in the region where [the claimant] lives or in several regions

-3-

of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that

the claimant retains the capacity to perform an alternative work activity and that this specific type

of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is

obligated to consider all medical evidence and the opinions of medical sources, including treating

physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule,"

imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.*

§ 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . .

treating sources" based on the view that "these sources are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)

and may bring a unique perspective to the medical evidence that cannot be obtained from

objective medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner

"[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant]

than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded

controlling weight. Even where the opinions of the treating physicians of the claimant are not

accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a

broad range of specifically identified factors, including the examining relationship, the nature and

extent of the treatment relationship, supportability of the opinions in the medical record,

consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The

-4-

Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1), (2).

The Commissioner has recognized that in a certain class of cases, particularly those involving complaints of chronic pain, there may not be traditional objective medical evidence to substantiate the claimant's disability claim. *Id.* § 1529(c)(3). The Commissioner pledges to consider "all available evidence," which may include testimony regarding the claimant's daily activities, description of her pain, precipitating factors, the effectiveness and side effects of pain medications, and measures utilized to relieve pain. *Id.* Further, the Commissioner commits to considering the full longitudinal medical record, rather than brief snapshots that may reflect short term or temporary relief, and the claimant's persistent efforts to seek out specialists or other sources to obtain relief from pain. SSR 96-7P, 61 Fed. Reg. 34483, 34487 (July 2, 1996).

### Factual Background

Plaintiff has a history of back pain that was reportedly exacerbated by a work related injury she suffered on April 20, 2010, while attempting to lift a patient out of bed. Transcript of Record ("Tr.") 332. While Plaintiff was being worked up for these worsening back complaints, an MRI revealed the presence of a renal cancer. Tr. 373. Some of her treating physicians initially suspected that the back pain was caused by her renal cancer or its metastatic spread but follow up studies indicated the cancer appeared localized to the kidney. Tr. 434, 532. Radiographic studies of Plaintiff's spine revealed no evidence of spinal stenosis or nerve

impingement to explain Plaintiff's persistent complaints of severe pain. Tr. 373. During the summer of 2010, Plaintiff was evaluated for her severe back pain by an orthopaedist, Dr. David Lannick; an oncologist, Dr. Scott Cross; and a family physician, Dr. Eric Fee. Plaintiff was treated with medications and went through a round of physical therapy. While she received some temporary relief from the medications and therapy, the pain returned and persisted. Tr. 331-32, 340, 345, 347-48, 373, 438, 455. None of Plaintiff's treating physicians questioned the validity of Plaintiff's persistent complaints of back pain and attributed her problems to osteoarthritis, degenerative disc disease, and congenital scoliosis. Tr. 332, 373. When Plaintiff's back symptoms persisted after the removal of her cancerous kidney and follow up studies confirmed the absence of metastasis, Plaintiff was referred to a pain specialist, Dr. Brian Weaver, and followed closely by an oncologist, Dr. Scott Cross. Dr. Weaver documented a detailed physical examination on January 11, 2011, that showed pain on lumbar flexion and extension, lateral rotation, and lateral bending. He specifically documented pain in the left sacroiliac joint, confirmed with positive Patrick's, Hoffmann's, and Gaenslen's tests. Tr. 655. Dr. Weaver initiated a series of injections into the sacroiliac joint and Plaintiff obtained some temporary relief. However, the pain soon returned. Tr. 648, 651, 688, 691, 696. After providing Plaintiff a broad spectrum of therapies, including medication and injections, Dr. Weaver ultimately concluded that Plaintiff's back condition rendered her permanently disabled, concurring in the detailed findings of a functional capacity study conducted on January 27, 2012, that he had ordered. Tr. 318, 905-26. This detailed functional study found that Plaintiff could not sit more than thirty minutes at a time and could not work more than four hours per day. Tr. 425. The study concluded that Plaintiff "is unable to work at this time." *Id.*

-6-

Dr. Scott Cross, who followed Plaintiff closely as her oncologist, reached the same conclusion regarding the disabling permanency of Plaintiff's back condition. Dr. Cross diagnosed Plaintiff with osteoarthritis, degenerative disc disease, and detro-convex scoliosis and documented her frequent and persistent complaints of severe back pain. Tr. 373, 562-63, 834, 840-43, 893, 898, 890-91. Dr. Cross expressed the hope that Plaintiff would be able to return to work and recommended she try various treatments to obtain relief. Tr. 893-95. However, by December 2011, Dr. Cross noted the patient's persistent pain and medication related fatigue and concluded that "[u]nfortunately these degenerative changes causing her pain will never actually improve." Tr. 890. Dr. Cross' back diagnosis for Plaintiff then concluded with "causing permanent disability." Tr. 891. Subsequently, on February 14, 2012, Dr. Cross completed a physical residual functional capacity evaluation that painted a grim picture regarding Plaintiff's capacity to function in the competitive work place. He concluded that Plaintiff could sit at any one time no more than thirty minutes and could only sit two hours in an eight-hour workday and would need a break every hour. He also opined that Plaintiff's work would frequently be interrupted because of pain and her pain medications sedated her and interfered with her ability to concentrate. Tr. 958-62.

Additionally, Dr. Fee, Plaintiff's primary care physician, continued to follow Plaintiff's medical care. He documented that Plaintiff's back pain was disturbing her sleep, a surgeon had determined her condition was non-operable, and medications were not particularly effective. Tr. 735, 745, 765.

Although the overwhelming body of medical evidence in the record documented Plaintiff's persistent complaints of severe back pain not resolved by physical therapy, pain

medications, and spinal injections, there were some questions raised by chart reviewers and a one

time examiner about the seriousness of Plaintiff's back condition.  Two chart reviewers, Dr.

Michael Cole, D.O., and Dr. Carolina Longa, M.D. produced nearly identical reports indicating

Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently and could sit up to

six hours in an eight-hour day.  Tr. 72-73, 99-101.  Both of these very abbreviated reports noted

that the reviewers did not have access to any contrary medical reports, such as those subsequently

produced by the treating physicians Dr. Cross and Dr. Weaver.  Tr. 73, 101.  Further, these chart

reviewers did not document in the record the basis of their opinion that Plaintiff could sit six

hours in an eight-hour day.[1]

The record also contained a rather odd note from an orthopaedist, Dr. Thomas Markham.

He indicated in a January 3, 2011 office note that he had seen Plaintiff but that she had not

brought with her any medical records or radiographic studies for his review.  He indicated that he

could "not see anything that would suggest she should be totally disabled" and "strongly

suspect[ed] that if she got into an appropriate exercise program, she would be better, although

possibly not well."  Tr. 568.  Dr. Markham then concluded his note by indicating that

"[u]nfortunately, I just do not have enough information to render a better opinion."  *Id.*

The Administrative Law Judge ("ALJ") conducted an evidentiary hearing in this matter

on April 4, 2012.  Plaintiff testified that her primary problem was severe back pain that limited

her to mostly lying in bed throughout the day.  Tr. 47, 49, 54.  Plaintiff explained that her back

ailment prevented her from sitting through her church service and she had to move around

---

[1] The record also contains chart reviews relating to Plaintiff's depression, which do not
directly address the claimant's back condition.  Tr. 70-71, 97-98.

periodically. Tr. 52. She further explained that she took daily doses of prescribed pain

medications that put her in a "zone" and "I really can't do much when I take the medication." Tr.

48, 51. Plaintiff testified that she was unable to work and survived through the generosity of an

aunt in New York and food stamps. Tr. 44, 53.

The ALJ issued a decision on April 24, 2012, finding that Plaintiff had severe

impairments of lumbar spondylosis, sacroiliitis, tendinitis, and status post cerebrovascular

accident but was not disabled under the Social Security Act because she retained the residual

functional capacity to perform sedentary work. Tr. 25, 27-31. The ALJ acknowledged that

Plaintiff's treating physicians, most notably Dr. Cross and Dr. Weaver, offered opinions that

"would appear that the claimant is precluded from full time activity at any level of exertion." Tr.

29. These opinions were given, however, "limited" or "moderate" weight for a variety of

reasons, including the fact that Plaintiff had only utilized "conservative treatment" that suggested

"the impairments are not so severe as to be disabling" and the "medical findings" of the treating

physicians were "inconsistent with a disabling impairment." Tr. 29-30. The ALJ contrasted the

opinions of Plaintiff's treating physicians with opinions offered by non-examining medical

consultants, who indicated Plaintiff could perform light work, and the opinion of Dr. Markham,

the one time examining orthopaedist who indicated that he "did not see anything that would

suggest [Plaintiff] was totally disabled." Tr. 31. The ALJ specifically challenged the finding of

the functional capacity evaluation, endorsed by both Dr. Cross and Dr. Weaver, that Plaintiff

could sit only thirty minutes at a time and for no longer than four hours per day, contending these

findings were "inconsistent with the claimant's conservative treatment history and longitudinal

records." *Id.* It is from this decision, adopted by the Commissioner after the Appeals Council

declined to review this matter, that Plaintiff now seeks judicial review.

## Discussion

This appeal raises issues that touch upon two important policies of the Social Security Act, the Treating Physician Rule and regulations concerning the evaluation of chronic pain. Both of these policies, if properly applied, tend to be beneficial to claimants in pursuing disability claims. The Treating Physician Rule requires, at a minimum, that the opinions of experts be evaluated based upon a series of factors heavily tilted toward the opinions of the treating physician, including consideration of the treatment history, examining history, and whether the treating physician is a specialist. 20 C.F.R. § 404.1527(c). The chronic pain rules recognize that certain claimants will have legitimate claims for disability based upon severe pain with limited objective medical evidence to demonstrate the presence of a disabling injury. The Commissioner pledges to consider "all evidence presented," including the claimant's "persistent attempts . . . to obtain relief," a review of the claimant's "longitudinal medical record," the claimant's daily activities, the frequency and intensity of the pain, and the side effects of the claimant's medications. *Id.* § 404.1529(c)(3); SSR 96-7P, 61 Fed. Reg. at 34487. The Commissioner further pledges to consider the testimony of the Plaintiff regarding her pain fairly and fully, in light of the entire record, and not to base a finding of lack of credibility based upon "an intangible or intuitive notion about an individual's credibility. *Id.* at 34486-87.

Measured by these standards, this record presents a compelling case for Plaintiff's claim of disability. Her two primary treating physicians are specialists who have long and involved treatment and examining histories with Plaintiff and have reached their opinions regarding the Plaintiff's significant functional impairments only after attempting a variety of treatment

-10-

modalities without any satisfactory response. They have both laid hands on the Plaintiff, listened over many months and years to her complaints of severe pain, and reached the judgment that her chronic pain is legitimate and functionally disabling. While it is correct that no MRI or lab study demonstrates conclusively the specific cause of this severe pain, medical practice is both art and science and the opinions of treating physicians are given significant weight under Social Security regulations. Moreover, the sheer persistence of Plaintiff's repeated complaints of severe back pain over dozens of office encounters with a variety of her treating doctors lend support to opinions of her treating doctors. Tr. 318, 330-32, 336, 347, 361, 373, 434, 442, 446, 450, 455, 511, 533, 653, 655, 691, 696, 745, 765, 840-43, 890, 905-26, 958-62. Further, the functional capacity evaluation, ordered and later endorsed by Dr. Weaver, provides a detailed functional basis to support the opinions of Dr. Weaver and Dr. Cross. Tr. 318, 905-926.

Dr. Cross, who as an oncologist is obviously no stranger to the effects of pain medications on a patient's sedation and ability to concentrate, concluded that Plaintiff's daily use of pain medications interfered with her ability to participate in a competitive work force. Tr. 962. This opinion evidence is corroborated by the testimony of Plaintiff at her administrative hearing, in which she stated that her medications left her in a "zone" and made her sedated with difficulty in maintaining concentration. Tr. 48, 51. There is no evidence in this record that in any way challenges or contests the opinion of Dr. Cross or the testimony of Plaintiff regarding the side effects of Plaintiff's chronic pain medication use.

In the face of this compelling evidence, the ALJ sides with the opinions of two chart reviewers and a one time examiner, all of whom appear not to have had access to Plaintiff's full

-11-

medical record or the opinions of her treating physicians.[2] The two chart reviews are remarkably thin in detail and evidentiary support and conclude Plaintiff can sit six hours per day without any reference to the source of their information. Tr. 72-73, 99-101. The one time examiner, Dr. Markham, acknowledges he issued his report without the benefit of access to the patient's medical record and recognizes the dubious nature of his opinions by stating that "I just did not have enough information to render a better opinion." Tr. 568. The idea that these non-treater opinions would trump the opinions of Plaintiff's long serving treating physicians on the basis of this record is wholly contrary to the principles and standards of the Treating Physician Rule.

Nowhere is the glaring disregard for the Treating Physician Rule more apparent than in the weight accorded to the opinions of the treating doctors on Plaintiff's ability to sit more than four hours in a work day. Plaintiff testified, without contest, that she spends most of the day in bed and cannot sit up for any significant duration. Tr. 47, 49, 54. That testimony is corroborated by the functional capacity evaluation that concludes Plaintiff cannot sit in one location more than thirty minutes or cannot sit more than four hours per day. Tr. 925. Plaintiff's treating physicians also offer opinions consistent with that limitation on sitting. Tr. 318, 959-60. Can the testimony of Plaintiff, the findings of the functional capacity evaluation, and the opinions of the two primary treating physicians be disregarded under the Treating Physician Rule in favor of the opinions of two non-examining chart reviewers who contend Plaintiff can sit six hours per day but offer no evidence to support this?

---

[2] Dr. Cole's chart review was completed on January 28, 2011, and Dr. Longa's chart review was completed on July 21, 2011. The functional capacity evaluation and Dr. Cross' and Dr. Weaver's opinions regarding Plaintiff's disability status were all prepared subsequent to those dates. Tr. 890, 926, 961-62.

The Court further finds highly questionable the claim that the opinions of Plaintiff's treating physicians and the credibility of Plaintiff herself should be brought into doubt because the claimant had allegedly undertaken only "conservative treatment." Tr. 29-30. The record demonstrates that Plaintiff pursued treatment in the form of physical therapy, joint injections, and chronic pain medications and sought opinions from at least two surgeons regarding a possible surgical treatment. The various treatment methods were not successful and Plaintiff was informed her back condition had no surgical option for treatment. Tr. 345, 424, 688, 691, 696, 745. The ALJ is silent about what additional treatment or procedures Plaintiff should have pursued. The record establishes that she sought out any solution that might provide her relief, and it is wholly inappropriate to question the opinions of the treating doctors or the credibility of Plaintiff because something more was not done to treat her chronic back pain.

It is quite clear that the ALJ's failure to review the competing medical opinions in the record under the standards set forth in the Treating Physician Rule mandates reversal of the Commissioner's decision. The real question here is whether that reversal should be accompanied with instructions to award benefits. This Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well settled that the district court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by the district court is appropriate where the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Comm'r of Soc. Sec.*, 104 F. Supp. 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim and the delay has placed a

heavy financial burden on the claimant. *Holohan*, 246 F.3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3rd Cir. 1984).

The issue in dispute here is quite a narrow one. The ALJ asserts that Plaintiff is capable of performing sedentary work while Plaintiff, supported by her treating physicians, asserts that her functional capacity is less than the standard for sedentary work. A significant point of contention centers on the ability of Plaintiff to sit no longer than thirty minutes at a time or more than four hours during the workday. Plaintiff has testified, without contest, that she spends most of her day in bed because of her back pain and is unable to sit up for any prolonged period of time. Tr. 47, 49, 54. This testimony is supported by the functional capacity evaluation and the opinions of Plaintiff's two treating physicians. Tr. 318, 925, 960. The only contrary evidence in the record are the opinions of the chart reviewers that Plaintiff can sit six hours per day, but the ALJ rejects the chart reviewers' opinion that Plaintiff is capable of light work. Tr. 72-73, 99-101. Moreover, the chart reviewers provide no evidentiary support for their opinion regarding the Plaintiff's ability to sit six hours per eight-hour workday. When applying the standards of the Treating Physician Rule and the substantial evidence standard, there is not substantial evidence in the record to support a finding that Plaintiff is capable of sitting more than four hours during a workday.[3]

Another important issue concerns the impact of Plaintiff's pain medications on her ability to maintain the stamina and concentration to perform work. Plaintiff testified without

---

[3] In order for a claimant to perform a full range of sedentary work, she must be able to remain in a seated position approximately six hours in an eight-hour work day. If a claimant is unable to meet this standard, the unskilled sedentary occupational base would be eroded. SSR 96-9P, 61 Fed. Reg. 34478, 34482 (July 2, 1996).

contradiction that her daily pain medications put her in a "zone" that resulted in sedation and a loss of the ability to concentrate. Tr. 48, 51. Dr. Cross independently raised the same issue and indicated that Plaintiff's pain medications interfered with her ability to function in the workplace. Tr. 890, 962. This evidence is uncontested and undermines any finding that Plaintiff is capable of sedentary work. In fact, this evidence strongly supports the opinions of Plaintiff's treating physicians that she does not retain the residual functional capacity for sedentary work.

Considering the record as a whole, the Court finds that there is not substantial evidence in the record to support a finding that Plaintiff is capable of performing sedentary work. Therefore, this record leads to but one conclusion, that Plaintiff is disabled under the Social Security Act, and the proper remedy under the circumstances present in this matter is to remand with an order to award benefits.

The only remaining issue is the date of onset. While Plaintiff asserts that the date of onset is December 16, 2009, the record establishes that Plaintiff suffered a work related injury on April 20, 2010, and has not returned to work since that date. Tr. 260, 332. Therefore, the proper date of onset is April 21, 2010.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and remands the matter to the Commissioner with the direction to award disability insurance benefits with an onset date of April 21, 2010.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

January 17, 2014
Charleston, South Carolina

-16-